JAMES GALE, Plaintiff-Appellant, *v.* TRANSAMERICA CORPORATION, a/k/a Transamerica Insurance Company, Defendant-Appellee.—(ALBERT SADACCA, a/k/a Tico Sadacca, *et al.,* Defendants.)

First District (4th Division)   No. 77-119

Opinion filed October 5, 1978.

Jerome Feldman, of Chicago (Judith A. Halprin, of counsel), for appellant.

Terence M. Heuel, of Gilmartin, Wisner & Hallenbeck, Ltd., of Chicago, for appellee.

Mr. JUSTICE LINN delivered the opinion of the court:

In the prior litigation underlying this case, Albert and Robin Sadacca (the Sadaccas) filed a complaint against James Gale (Gale) contending Gale owed them $31,200. To effectuate collection of the claimed indebtedness, the Sadaccas obtained the issuance of a writ of attachment and caused the seizure of certain Indian jewelry in Gale's possession. Transamerica Corporation (Transamerica) acted as surety on the Sadaccas' attachment bond. The trial court, in that underlying action, eventually quashed the Sadaccas' attachment writ, dismissed the Sadaccas' law suit, and, over Gale's objection, released Transamerica's attachment bond.

Gale subsequently filed this separate action in the circuit court of Cook County against Transamerica and the Sadaccas seeking damages incurred in consequence of the allegedly inappropriate and improper attachment

proceeding by virtue of which Gale's property was wrongfully seized. The trial court, in this case, granted Transamerica's motion to dismiss, finding: (1) that the release of Transamerica's attachment bond in the prior litigation was a judicial determination that the attachment proceeding was not inappropriate, improper nor wrongful; and (2) that the aforesaid determination is *res judicata* and precludes Gale from maintaining an action for damages against Transamerica on its attachment bond.

Gale appeals, contending: (1) that the dismissal of the Sadaccas' case seeking payment of an alleged indebtedness and the quashing of the attachment writ in the prior action establishes that the attachment proceeding was wrongfully brought; and (2) that the release of the attachment bond, in that prior proceeding, is not a bar to Gale's present action against Transamerica for damages Gale incurred as a result of the attachment action.

We agree with Gale and, therefore, reverse and remand this case for further proceedings.

The pertinent facts disclose that in 1974 the Sadaccas filed a complaint in the circuit court of Cook County against James Gale, Sr., James Gale, Jr., and Gale Indian Arts. In connection with that proceeding the Sadaccas obtained the issuance of a writ of attachment, pursuant to the terms of which the sheriff seized certain Indian jewelry in the possession of James Gale, Jr.

In accordance with section 4a of "An Act in regard to attachments" (Ill. Rev. Stat. 1977, ch. 11, par. 4a), the Sadaccas filed an attachment bond on which Transamerica acted as surety. The attachment bond ensured that in the event it was later determined that the writ of attachment was wrongfully issued, the damages and costs incurred by Gale would be satisfied by the surety.

On January 31, 1975, the trial court in that underlying litigation: (1) dismissed the Sadaccas' complaint but granted them leave to file an amended complaint; (2) quashed the attachment writ; and (3) ordered that the seized property remain in the sheriff's possession pending further proceedings.

Following the filing of an amended complaint by the Sadaccas, a trial was held on the merits. On March 4, 1975, at the close of the Sadaccas' case, the trial court granted Gale's motion for a directed finding and ordered that the seized property be returned to Gale. Further, the trial court denied Gale's request that the attachment bond stand pending further proceedings. Instead, the trial judge ordered that the bond "be released instanter." The order does not explain why the bond was released. Gale's motion to have the bond reinstated was denied. The

record in this case and the briefs of the parties fail to disclose both the basis upon which the attachment bond was released in the underlying litigation and the effect the trial court intended the "release" to have.

On February 24, 1976, Gale filed this separate action against Transamerica and the Sadaccas seeking damages allegedly incurred as a result of the aforementioned attachment proceedings. Transamerica's motion to dismiss was granted. Gale has taken this appeal.

OPINION

A proper understanding of the issue posed by this case necessitates a brief review of the law concerning wrongful attachments.

"An Act in regard to attachments" (Ill. Rev. Stat. 1977, ch. 11, pars. 1 *et seq.*) authorizes a creditor to attach the assets of an alleged debtor pending the outcome of the creditor's lawsuit against the debtor on an alleged money claim. The writ of attachment may be obtained by the creditor through a summary, *ex parte* application.[1]

■■ If an alleged creditor procures a writ of attachment but does not prevail on either the ground(s) assigned for the attachment (Ill. Rev. Stat. 1977, ch. 11, par. 1) or the merits of his alleged money claim, the quashing of the attachment and/or the dismissal of the complaint conclusively establishes that the attachment was wrongful. (*Gilbert v. Estate of Yunk* (1905), 214 Ill. 237, 73 N.E. 335; *English Canning & Manufacturing Co. v. John Sexton & Co.* (1921), 222 Ill. App. 110; *Damron v. Sweetser, Caldwell & Co.* (1885), 16 Ill. App. 339; Stelk, A Guide to the Attachment & Garnishment Law of Illinois §4, at 14 (1916); 7 C.J.S. 2d Attachment §517, at 664 (1937).) This is true even though the attachment was obtained in good faith and with probable cause. *Churchill v. Abraham* (1859), 22 Ill. 456; *First State Bank v. Clark* (1916), 202 Ill. App. 283.

■■ ■ The attachment debtor has the right to maintain an independent tort action against the attachment creditor (*Baird v. Liepelt* (1965), 62 Ill. App. 2d 154, 210 N.E.2d 1), and an independent contract action against the surety on its attachment bond (*Churchill v. Abraham* (1859), 22 Ill. 456; *Damron v. Sweetser, Caldwell & Co.* (1885), 16 Ill. App. 339; *Silverman v. City Engineering Construction Co.* (1930), 338 Ill. 154, 170

---

[1] In *Hernandez v. Danaher* (N.D. Ill. 1975), 405 F. Supp. 757, 762, a three judge panel found the Illinois Attachment Act unconstitutional as "patently violative of the due process clause of the Fourteenth Amendment ° ° °" and enjoined a pending attachment proceeding by the Illinois Department of Public Aid. The United States Supreme Court reversed *Hernandez* holding that the non-interference principles set forth in *Younger v. Harris* (1971), 401 U.S. 37, 27 L. Ed. 2d 669, 91 S. Ct. 746, and *Huffman v. Pursue, Ltd.* (1975), 420 U.S. 592, 43 L. Ed. 2d 482, 95 S. Ct. 1200, controlled and made it error for the Federal District Court to reach the issue of the Illinois Attachment Act's constitutionality prior to the parties exhaustion of their state judicial remedies. *Trainor v. Hernandez* (1977), 431 U.S. 434, 52 L. Ed. 2d 486, 97 S. Ct. 1911.

N.E. 250; but see *Wilson v. Isom* (1878), 3 Ill. App. 246) for damages incurred as a result of the wrongful attachment.[2]

■■ The attachment debtor may also have an action against the attachment creditor for maliciously suing out the writ of attachment. (2 Nichols, Illinois Civil Practice §1772, at 184 (1961).) While the quashing of the attachment and/or the dismissal of the attachment creditor's complaint conclusively establishes that the attachment was wrongful, it leaves open the question of whether the attachment was effected with malice and without probable cause. Waples on Attachment & Garnishment §1023, at 693 (1895); see *Barrett v. Spaids* (1873), 70 Ill. 408; *Davis v. Baker* (1899), 88 Ill. App. 251.[3]

In the prior litigation underlying this case, Gale, the attachment debtor, not only succeeded in quashing the Sadaccas' attachment writ but he also prevailed on the merits of their alleged money claim. In light of the above principles, it is beyond dispute that the Sadaccas' attachment was wrongful and that Gale acquired the right to proceed against the Sadaccas and Transamerica, their surety, for the damages he incurred as a result of that attachment. The issue presented here is whether the release of the attachment bond in the prior litigation precludes this separate action by Gale against Transamerica. Transamerica, of course, contends that it does. We disagree.

■■ Under the doctrine of estoppel by judgment (generally termed *res judicata*), a final judgment on the merits rendered by a court of competent jurisdiction will estop the same parties and their privies, in a subsequent proceeding on the *same* cause of action, from relitigating all matters which were or should have been disposed of in the prior action. (*Bland v. Lowery* (1976), 43 Ill. App. 3d 413, 356 N.E.2d 1318.) It is apparent that Gale's instant cause of action against the Sadaccas and Transamerica for wrongful attachment is distinct from the Sadaccas' prior cause of action against Gale based on an alleged claim of indebtedness. Therefore, the doctrine of *res judicata* does not apply. The bar, if any, to Gale's instant cause of action must be by way of estoppel by verdict.

■■ Under the doctrine of estoppel by verdict (generally termed

[2] The attachment debtor's damages may include witness costs (*English Canning & Manufacturing Co. v. John Secton & Co.* (1921), 222 Ill. App. 110) and attorney fees (*Baird v. Liepelt* (1965), 62 Ill. App. 2d 154, 210 N.E.2d 1) as well as other personal expenses (see *Damron v. Sweetser, Caldwell & Co.* (1885), 16 Ill. App. 339) necessarily incurred in setting aside the attachment. In the absence of proof of actual damages, nominal damages may be recovered. *Burbridge v. Howard* (1913), 184 Ill. App. 185.

[3] If it can be proven that the attachment creditor maliciously obtained the attachment without probable cause, the attachment debtor may recover, in addition to exemplary damages, damages for loss of credit, breaking up of business, loss of customers and injury to reputation. Compare *Lawrence v. Hagerman* (1870), 56 Ill. 68, with *Oberne v. Gaylord* (1883), 13 Ill. App. 30.

collateral extoppel), the former adjudication estops relitigation of only those matters actually raised and decided in the prior action. (*Pierog v. H. F. Karl Contractors, Inc.* (1976), 39 Ill. App. 3d 1057, 351 N.E.2d 249.) The party who invokes collateral estoppel as a defense, bears the burden of establishing by clear and convincing evidence that the issue involved was determined in the prior action. *Cowan v. Insurance Company of North America* (1974), 22 Ill. App. 3d 883, 318 N.E.2d 315; *Kedzierski v. Kedzierski* (1967), 86 Ill. App. 2d 264, 229 N.E.2d 919.

In contending that its liability on the attachment bond was adjudicated in the prior action, Transamerica relies solely upon the trial court's order in that proceeding which states that the attachment "bond * * * be released instanter." Transamerica reasons that this order released it from any and all liability on the attachment bond and therefore acts as a bar to this present action by Gale. We disagree.

Transamerica's contention relies upon two implicit assumptions that we reject: (1) that the trial court in the prior action was ignorant of the law concerning wrongful attachments; and (2) that the trial court's "release" of the attachment bond necessarily released Transamerica from all liability on its bond.

First, in light of the fact that it is Transamerica who bears the heavy burden of proof in establishing its collateral estoppel defense, we believe that it is reasonable, if not necessary, to assume, in the absence of *any* evidence to the contrary, that the trial court in the underlying litigation was aware of the law concerning wrongful attachments. Accordingly, it would be unreasonable to say, on the one hand, that the trial court in the prior action quashed the attachment and directed a finding in Gale's favor on the merits of the Sadaccas' alleged claim, thereby establishing that the attachment was wrongful, and on the other hand, to say that the trial court intended to or did in fact release Transamerica from all liability on its bond, when the very purpose of the bond was to ensure Gale that any damages he incurred as a result of a wrongful attachment, would be satisfied.

Second, the phrase "bond * * * be released instanter" has no universally recognized meaning. Considering the unique context presented by this case, we feel the only reasonable interpretation of the release order is that the trial court was merely making clear that since it had already disposed of the Sadaccas' cause of action in Gale's favor and ordered the attached property returned to Gale, Transamerica's obligation in that case as the Sadaccas' surety had terminated (or was "released") in the sense that Transamerica would accrue *no more* liability. We do not believe, nor does the record indicate, that the trial court in that prior proceeding intended to, or did in fact, release Transamerica from

any and all liability which had already accrued on the bond in favor of Gale.

Accordingly, for the reasons set forth, we reverse the trial court and remand this case for further proceedings in accordance with the views expressed.

Reversed and remanded.

DIERINGER and ROMITI, JJ., concur.